UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID H. CRUMPTON, in
his capacity as Distribution Trustee
for the Distribution Trust of Northlake
Foods, Inc.,

      Appellant,

v.                       CASE NO.  8:11-CV-2649-T-17

A. DOUGLAS MCGARRITY,

      Appellee.

_____/

ORDER

This cause is before the Court on:

Dkt. 11  Brief of Appellant
Dkt. 19  Brief of Appellee
Dkt. 21  Reply Brief

This case is an appeal of the Bankruptcy Court's Order Granting Motion to Dismiss Amended Complaint, entered on September 9, 2011, and the Order on Motion for Judgment on the Pleadings, as to the Complaint, entered on February 9, 2011.

Appellant David H. Crumpton, etc., commenced an Adversary Proceeding by filing a Complaint to Avoid and Recover Transfers of Property Pursuant to 11 U.S.C. Sec. 544, 548, 550 and 551, and O.C.G.A. Secs. 18-2-70 et seq., as Amended, and For Disallowance of Claims Pursuant to 11 U.S.C. Sec. 502(d) and Equitable Subordination of Claims Pursuant to 11 U.S.C. Sec. 510(c).  (Dkt. 1-5).  Appellant David H. Crumpton, etc., subsequently filed a First Amended Complaint to Avoid and Recover Illegal Dividend Pursuant to 11 U.S.C. Secs. 544, 550 and 551, and O.C.G.A. Sec. 14-

Case No. 8:11-CV-2649-T-17

2-640(c), and for Disallowance of Claims Pursuant to 11 U.S.C. Sec. 502(d) and
Equitable Subordination of Claims Pursuant to 11 U.S.C. Sec. 510(c).  (Dkt. 1-13).

I.  Standard of Review

The Court reviews legal conclusions and the legal significance accorded to the
facts de novo.  De novo review requires the Court to make a judgment independent of
the Bankruptcy Court's, without deference to that Court's analysis and conclusions.  In
Re Piper Aircraft Corp., 244 F.3d 1289, 1295 (11th Cir. 2011)(citing Moody v. Amoco Oil
Corp., 734 F.2d 1200, 1210 (7th Cir. 1984).

II.  Issue on Appeal

Appellant has identified the following issues:

1.  Did the Bankruptcy Court err in ruling that Debtor's pre-petition transfer
of $94,429.00 shareholder dividend to Appellee satisfied an antecedent
debt;

2.  Did the Bankruptcy Court err in ruling that Debtor received reasonably
equivalent value on account of the $94,429.00 shareholder dividend to
Appellee;

3.  Did the Bankruptcy Court err in ruling that Debtor's pre-petition transfer
of $94,429.00, made while Debtor was insolvent, or which rendered the
Debtor insolvent, is not an avoidable fraudulent transfer.

III.  Complaint

The Complaint included Count I, Avoidance of Fraudulent Transfers Pursuant to
Section 544 of the Bankruptcy Code and the Georgia Uniform Fraudulent Transfer Act,
Count II, Avoidance of Fraudulent Transfer Pursuant to Sections 544 and 548 of the

Case No. 8:11-CV-2649-T-17

Bankruptcy Code, and Count III, Disallowance of Claims Pursuant to Section 502(d) of the Bankruptcy Code and Equitable Subordination of Claims Pursuant to Section 510(c) of the Bankruptcy Code.  In Count I, Appellant alleged it was entitled to avoid the Transfers pursuant to 11 U.S.C. Sec. 544(b)(1), applying O.C.G.A. Secs. 18-2-70, et seq., 18-2-74(a)(1) and 18-2-74(a)(2), to recover the 2006 Transfers pursuant to 11 U.S.C. Sec. 550, and preserve the recovered 2006 Transfers for the Distribution Trust and its beneficiaries pursuant 11 U.S.C. Sec. 551.  The Shareholder Agreement and Resolution of the Board of Directors are attached to the Complaint.

> The Shareholder Agreement provides:

>> 5.01 Dividends.    If the Corporation's income ever becomes taxable to the Shareholders rather than to the Corporation, the Corporation shall pay a dividend at least annually in an amount and at a time sufficient for each Shareholder to pay out of the dividend all income tax, state and federal, attributable to that portion of the Corporation's income included in such Shareholder's income in the year preceding the year of payment of the dividend.

The assigned Bankruptcy Judge granted Appellant McGarrity's Motion for Judgment on the Pleadings, on the basis that "the Complaint reflect[ed] that the Debtor received reasonably equivalent value for the 2006 transfer.  O.C.G.A. Sec. 18-2-73(a) and 11 U.S.C. Sec. 548(d)(2)(A) each define value within the context of fraudulent transfer law to include satisfaction of an antecedent debt, and the 2006 Transfer satisfied an antecedent debt owed to Defendant pursuant to the Shareholders Agreement."

The assigned Bankruptcy Judge further found that Appellant McGarrity was entitled to judgment on the pleadings on the additional grounds that "the Debtor

3

Case No. 8:11-CV-2649-T-17

received reasonably equivalent value for the 2006 Transfer by virtue of the Debtor's Subchapter-S election for federal income tax purposes.  The 2006 Transfer was made to Defendant pursuant to the Shareholder Agreement to pay the Defendant's proportionate share of income tax liability incurred by Defendant as a result of the Debtor's operations.  Without the Sub-S corporation designation for federal income tax purposes, the Debtor would have paid the income tax directly."

The assigned Bankruptcy Judge further found that the Trustee did not assert a claim against Appellant McGarrity under the Georgia Business Corporation Code, and dismissed the Complaint without prejudice, granting leave to file an amended complaint.

IV.  First Amended Complaint

The First Amended Complaint included Count I, for Avoidance, Recovery and Preservation of Illegal Dividend, and Count II, for Disallowance of Claims Pursuant to Section 502(d) of the Bankruptcy Code and Equitable Subordination of Claims Pursuant to Section 510(c) of the Bankruptcy Code.  In Count I Appellant seeks an order and judgment compelling the avoidance of the 2006 Transfers, and authorizing Appellant to recover the 2006 Transfers pursuant to 11 U.S.C. Sec. 550, and preserve the recovered 2006 Transfers for the Distribution Trust and its beneficiaries pursuant to 11 U.S.C. Sec. 551.  The Shareholder Agreement dated March 1, 1991 and Resolution of Board of Directors of Northlake Foods, Inc. are attached to the Amended Complaint. (Exh. A, Exh. B).

The assigned Bankruptcy Judge stated that "O.C.G.A. Sec. 14-2-640(c) provides that no distribution may be made shareholders if, after giving the distribution effect, the corporation would not be able to pay its debts as they become due or the corporation's total assets would be less than its total liabilities.  O.C.G.A. Sec. 14-2-832 imposes

4

Case No. 8:11-CV-2649-T-17

personal liability upon directors who vote for or assent to a distribution that violates
O.C.G.A. Sec. 14-2-640(c) to the extent a distribution exceeds what could have been
distributed without violating Code Section 14-2-640. Directors held personally liable
under O.C.G.A. Sec. 14-2-832(a) are then entitled to contribution from other directors
who could be held liable under O.C.G.A. Sec. 14-2-832(a) and from each shareholder
for the amount of the distribution that such shareholder accepted while knowing that it
was made in violation of O.C.G.A. Sec. 14-2-640." The Bankruptcy Court found that
"Plaintiff's remedy for an allegedly improper distribution is proscribed by the Georgia
statutes. That is, to pursue the directors who voted or assented to the distribution in
violation of O.C.G.A. Sec. 14-2-640, who in turn may seek contribution from the
sources specified in O.C.G.A. Sec. 14-2-832(b). In this case, it appears that the two
year statute of limitations for an action by the Plaintiff against the directors has expired.
See O.C.G.A. Sec. 14-2-832."

The Bankruptcy Court granted the Motion to Dismiss Count I, and dismissed
Count II because it was dependent on Count I. The Bankruptcy Court further dismissed
the adversary proceeding.

V. Posture of this Case

In ruling on a motion to dismiss, the Court determines whether the complaint
includes sufficient well-pleaded facts to raise a right to relief above the speculative
level, accepting all allegations as true, viewing them in the light most favorable to the
plaintiff, and drawing all reasonable inferences from them. When documents are
attached to the complaint, those documents become a part of the pleading for all
purposes.

Northlake Foods, Inc. filed a Chapter 11 petition on September 15, 2008. In
accordance with the Order confirming Debtor's Chapter 11 Plan, the Bankruptcy Court

Case No. 8:11-CV-2649-T-17

approved the appointment of the Distribution Trustee on January 28, 2009, and
Debtor's actions, claims demands, rights, defenses, counterclaims, suits and causes of
action were transferred to the Distribution Trust.  The Adversary Proceeding was filed
on August 3, 2010.   After the Bankruptcy Court dismissed the Complaint on a Motion
for Judgment on the Pleadings, with leave to amend, Appellant filed the Amended
Complaint, which the Bankruptcy Court dismissed.   .

    In his Answer, Appellee acknowledged receipt of a cash dividend payment in the
amount $94,429.00 in 2006, in accordance with Section 5.01 of the Shareholders
Agreement.

VI . Discussion

    The Complaint includes allegations that the 2006 Transfers were made with
actual intent to hinder, delay or defraud a creditor or creditors of Debtor, and Debtor did
not receive reasonably equivalent value in exchange for the 2006 Transfers.  The
Complaint further states that Debtor received no consideration for the 2006 Transfers.
    These allegations reflect the provisions of 11 U.S.C. Sec. 548(a)(1)(A) and (B)(i),
and O.C.G.A. 18-2-74(a)(1) and (2).

    The Court notes that the Complaint and the Amended Complaint include the
following allegations:

> 18.  At the time of the 2006 Transfers, Debtor was engaged
> or was about to engage in a business or a transaction for
> which Debtor's remaining assets were unreasonably small in
> relation to the business or transaction;
>
> 19.  At the time of the 2006 Transfers, Debtor intended to
> incur, or believed or reasonably should have believed it
> would incur, debts beyond its ability to pay as they became

6

Case No. 8:11-CV-2649-T-17

due;

20.  After making the 2006 Transfers, Debtor was unable to
pay its debts as they became due in the usual course of
business.

21.  Debtor was insolvent on the dates that the 2006
Transfers were made or became insolvent as a result of the
2006 Transfers.

The allegations reflect the provisions of 11 U.S.C. Sec. 548(a)(1)(B)(ii) and O.C.G.A.

18-2-74(2)(A) and (B),  Fraudulent Transfer Act, indicating factors relevant to the

determination of constructive intent to defraud.

After the Bankruptcy Court granted the Motion for Judgment on the Pleadings,

Appellant proceeded on the theory of unlawful distributions rather than fraudulent

transfers:

O.C.G.A. 14-2-640 provides:

(a) A board of directors may authorize and the corporation may make
distributions to its shareholders subject to restriction by the articles of
incorporation and the limitation in subsection (c) of this Code section.

......

(c) No distribution may be made if, after giving it effect:

(1) The corporation would not be able to pay its debts as they become
due in the usual course of business; or

(2) The corporation's total assets would be less than the sum of its total
liabilities plus (unless the articles of incorporation permit otherwise) the
amount that would be needed, if the corporation were to be dissolved at
the time of the distribution, to satisfy the preferential rights upon
dissolution of shareholders whose preferential rights are superior to those
receiving the distribution.

7

Case No. 8:11-CV-2649-T-17

(d) The board of directors may base a determination that a distribution is
not prohibited under subsection (c) of this Code section either on financial
statements prepared on the basis of accounting practices and principles
that are reasonable in the circumstances or on a fair valuation or other
method that is reasonable in the circumstances.

O.C.G.A. 14-2-832 provides:

**§ 14-2-832. Liability for unlawful distributions**

(a) A director who votes for or assents to a distribution made in violation of
Code Section 14-2-640 or the articles of incorporation is personally liable
to the corporation for the amount of the distribution that exceeds what
could have been distributed without violating Code Section 14-2-640 or
the articles of incorporation if it is established that he did not perform his
duties in compliance with Code Section 14-2-830. In any proceeding
commenced under this Code section, a director has all of the defenses
ordinarily available to a director.

.....

(c) A proceeding under this Code section is barred unless it is
commenced within two years after the date on which the effect of the
distribution was measured under subsection (e) or (g) of Code Section 14-
2-640.

A.  Satisfaction of Antecedent Debt

A debt is antecedent to the transfer sought to be avoided if it is pre-existing or
incurred before the transfer.  Whether a debt is antecedent to the transfer at issue
depends on when the debt is incurred.

The Bankruptcy Code does not expressly define when a debtor "incurs" a debt.
Under the Bankruptcy Code, a "debt" is a "liability on a claim."  See 11 U.S.C. Sec.
101(12).  A "claim" is a right to payment, whether or not such right is reduced to
judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed,

8

Case No. 8:11-CV-2649-T-17

undisputed, legal, equitable, secured, or unsecured." Id. Sec. 101(5)(a).   By making the terms "debt" and "claim" coextensive, Congress has adopted the broadest possible definition of "debt."  See In Re Chase & Sanborn Corp., 904 F.2d 588, 595 (11th Cir. 1990)("It is established that "debt" is to be given a broad and expansive reading for the purposes of the Bankruptcy Code.")   A debtor incurs a debt to a creditor when the creditor has a claim against the debtor, even if the claim is unliquidated, unmatured, unfixed or contingent. In Re Mazzeo, 131 F.3d 295, 302 (2d Cir. 1997)([T]he term debt is sufficiently broad to cover any possible obligation to make payment).

In the Complaint and Amended Complaint, Appellant alleges:

> 14.  The Debtor's year 2005 "U.S. Income Tax Return for an S Corporation" was filed on Form 1120S and reflected positive taxable income for such year.  A representative of Bennett Thrasher PC, the Debtor's CPA and income tax preparation firm, signed the tax return on September 14, 2006.

A "C" corporation is an independent entity which is required to pay taxes on profits earned by the corporation.  An "S" corporation is an entity which elects to be taxed as a partnership. The election to become a Subchapter S corporation means that the tax attributes of the corporation pass through to the sharéholders.  If the S corporation earns a profit in a particular year, the shareholders may elect to take the profit, pay the tax and keep the balance.  If the S corporation sustains a loss, the shareholders may utilize the loss to offset other income and reduce their tax due.  In this case, the shareholders elected not to take profits as they accrued, but took only a sum sufficient to pay the state and federal income tax due.   Once an "S" election is made, responsibility for the payment of taxes owed on Debtor's income passes through to Debtor's shareholders based on each shareholder's pro rata share of Debtor.  See 26 U.S.C. Sec. 1366 (a)(1)(A).

Case No. 8:11-CV-2649-T-17

The Shareholder Agreement was entered into on March 1, 1991. The Shareholder Agreement is a binding contractual obligation of the Debtor Corporation, based on the intent expressed within the Shareholder Agreement. The Shareholder Agreement also expresses the parties' belief that "it is in the best interest of the Shareholder and the Corporation to restrict the disposition of shares of the Corporation owned by each Shareholder and to accomplish other purposes set forth in the Agreement." In 2006, the Directors of Debtor adopted a Resolution by unanimous consent which authorized and approved a cash dividend payment to Appellant in the amount of $94,429.00, which was paid to Appellee in 2006.

The Shareholder Agreement  established the Debtor's binding obligation to make the tax distribution to Appellee in 2006 for the Appellee's liability for income taxes on income earned in 2005, including Appellee's pro rata share of the Debtor's 2005 income. The tax distribution is labeled a dividend, but was paid to satisfy the Debtor's binding obligation to Appellee

After consideration, the Court **affirms** the decision of the Bankruptcy Court as to this issue.

B. Reasonably Equivalent Value; Evidentiary Hearing

Appellant contends that the Debtor received no value in return for the tax distribution to Appellee. Under 11 U.S.C. Sec. 548(d)(2)(A), "value" means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor. Where a direct or indirect benefit is conferred on the Debtor, a transfer may not be avoided. In Re Rodriguez, 895 F.2d 725, 727 (11th Cir. 1990). In this case, the Court knows what the Debtor gave to Appellee–$94,429.00. The Court has considered the value of what was given in return, which is the satisfaction of an antecedent debt of

10

Case No. 8:11-CV-2649-T-17

the same amount; the Court has determined that the 2006 Transfer satisfied an antecedent debt of Debtor.

If Debtor had remained a "C" corporation, Debtor would have been required to pay state and federal income taxes. At some point Debtor elected to become an "S" corporation, whereby Debtor's income, losses, deductions and credits were passed through to the shareholders, on a pro rata basis. The taxable income of an S corporation is generally computed the same way as that of an individual, but without certain deductions allowed for individuals. The Shareholder Agreement required the payment of only an amount sufficient to pay state and federal income taxes for Appellee that otherwise would have been an obligation of Debtor.

Appellant contends that the issue of reasonably equivalent value required an evidentiary hearing. In this case, the Bankruptcy Court determined the issue on the basis of undisputed facts within the pleadings. In resolving the Motion for Judgment on the Pleadings and the Motion to Dismiss, the Bankruptcy Court ruled as a matter of law, based on the undisputed facts. An evidentiary hearing is not always required. See In Re Propex, 415 B.R. 321, 324 (Bankr. E.D. Tenn. 2009)(citing cases determining reasonably equivalent value as a matter of law).

After consideration, the Court **affirms** the decision of the Bankruptcy Court as to this issue.

C. Recovery from Recipient

Appellant argues that the Bankruptcy Court is in error in ruling that the remedy of an interested party for an illegal shareholder dividend is to pursue recovery from the director or directors authorizing the illegal dividend. Appellant argues that Bankruptcy Court ignored the significance of the express prohibition against illegal dividends in the

11

Case No. 8:11-CV-2649-T-17

context of a fraudulent transfer action.

In the Amended Complaint, Appellant does not refer to 11 U.S.C. Sec. 548 or O.C.G.A. 18-2-74., fraudulent transfer claims which the Bankruptcy Court dismissed in granting the Motion for Judgment on the Pleadings. Appellant included only factual allegations relevant to the determination of constructive fraudulent intent. The basis of Count I of the Amended Complaint is the prohibition on issuance of illegal dividends in the Georgia Business Corporations Code, O.C.G.A. 14-2-640(c), not Georgia's Uniform Fraudulent Transfer Act. The Bankruptcy Court did not err in ruling that the remedy Appellant sought is proscribed in the Georgia statute, which provides for the personal liability of directors who assent to the issuance of an illegal dividend, with the right to contribution from other directors and from the recipient of the illegal dividend. Appellant did not allege that Appellee is a director who authorized the 2006 Transfers; the Resolution of the Board of Directors was signed by William B. Johnson, Larry P. Martindale and Daryl L. Saylor. (Dkt. 1-15).

The Bankruptcy Court did not err in dismissing Appellant's request to compel the avoidance of the 2006 Transfers under 11 U.S.C. Sec. 550 and to preserve the recovered Transfers under 11 U.S.C. Sec. 551, based on the alleged illegal dividend under O.C.G.A. 14-2-640(c). Because Count II was dependent on Count I, the Court concludes that the Bankruptcy Court did not err in dismissing Count II, and the adversary complaint. The Court **affirms** the decision of the Bankruptcy Court as to these issues.

D. Collateral Estoppel

Appellee argues that principles of collateral estoppel apply in this context. The Court has affirmed the decision of the Bankruptcy Court and concludes that it is not necessary to rule on this issue. Accordingly, it is

Case No. 8:11-CV-2649-T-17

**ORDERED** that the decisions of the Bankruptcy Court are **affirmed**.  The Clerk of Court shall close this case.

**DONE and ORDERED** in Chambers, in Tampa, Florida on this 27th day of September, 2012.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record

13